# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

H&E EQUIPMENT SERVICES, INC.                             CIVIL ACTION

VERSUS                                                   22-103-SDD-RLB

KEVIN HARLEY

## RULING

This matter is before the Court on the Motion for Temporary Restraining Order ("TRO") and Preliminary and/or Permanent Injunction[1] filed by Plaintiff, H & E Equipment Services, Inc. ("Plaintiff"). Defendant, Kevin Harley ("Defendant") was served with a summons in this matter on February 11, 2022, but, to date, he has not appeared in this matter and has not responded to communications from Plaintiff's counsel.

Plaintiff is a corporation organized under the laws of Delaware with its principal place of business in Louisiana.[2] Plaintiff alleges Defendant is a natural person of the age of majority who is, upon information and belief, domiciled in Arizona.[3]

This Court has jurisdiction over the causes of action pursuant to 28 U.S.C. §§ 1331 and 1332, because Plaintiff asserts certain causes of action that arise under federal law and because this dispute is between citizens of different States and concerns an amount in controversy that exceeds $75,000, exclusive of interest and costs.[4] Venue is proper in

---

[1] Rec. Doc. No. 2.
[2] Rec. Doc. No. 1, ¶ 1.
[3] *Id.* at ¶ 2.
[4] *Id.* at ¶ 3. The Court finds for the purposes of this motion that Plaintiff has made a *prima facie* showing that the Court has personal jurisdiction over this Defendant based on his contacts with Louisiana and that the intended injury and actual injury are felt in Louisiana.

this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in the Middle District of Louisiana. In particular, Plaintiff's conduct (as alleged herein) (a) was targeted towards Plaintiff, which was formerly Defendant's employer and which is domiciled in the Middle District of Louisiana, and (b) intentionally and/or knowingly converted and misappropriated information that was accessed, routed, managed and controlled by and through Plaintiff's servers that are located in the Middle District of Louisiana.[5]

On February 14, 2022, the Court set this matter for a telephone status conference to held on February 15, 2022. As is this Court's practice, the Court ordered that Plaintiff's counsel "is responsible for contacting counsel for Defendant and notifying counsel of this status conference."[6] At the February 15, 2022 telephone status conference, Plaintiff's counsel advised the Court that they were not aware of any counsel enrolled for the Defendant and that they notified Defendant by email of the status conference. The Court set a Preliminary Injunction Hearing for March 2, 2022, ordered Plaintiff's counsel to advise the Court if contact with Defendant's counsel was made, and took the Motion for TRO under advisement.[7]

## I.   FACTUAL BACKGROUND & ALLEGATIONS IN VERIFIED COMPLAINT

Plaintiff's business involves selling, renting, servicing, maintaining, and otherwise dealing in or with construction equipment, heavy industrial equipment, material handling equipment, and utility equipment, and related parts, implements, or similar assets.[8] On or about October 5, 2020, Plaintiff hired Defendant as a sales representative in the

---

[5] *Id.* at ¶ 4.
[6] Rec. Doc. No. 10.
[7] Rec. Doc. No. 12.
[8] Rec. Doc. No. 1, ¶ 5.

2

Tucson, Arizona market.[9]  At the time of Defendant's hire, on October 8, 2020, he and Plaintiff executed a "Confidentiality, Non-Competition, and Non-Solicitation Agreement" ("the Non-Competition Agreement") wherein Defendant agreed that he would not: (1) "disclose to any person or entity, without [H&E's] prior consent any confidential, proprietary, and trade secret information and data, whether prepared by [Harley] or others"; and (2) "except in the furtherance of the Business of [H&E] . . . remove confidential, proprietary, and trade secret information and data from the premises of Company, without the prior written consent of Company."[10]  This Agreement defined the terms "confidential, proprietary, trade secret information and data" to include the following:

> business, pricing, and management methods and techniques; training; finances, strategies, systems, research, surveys, plans, reports, recommendations, and conclusions; names and contact information of, arrangements with, or other information relating to, Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives, and other persons who have business relationships with Company or who are prospects for business relationships with Company; technical information, work products, and know-how; performance evaluations and the particulars of function of other employees of H&E; trade secrets; and, cost, operating, and other management information systems, and other software and programming.[11]

As to the availability of injunctive relief, the Agreement also provides:

> Since monetary damages will be inadequate and Company will be irreparably damaged if the provisions of this Agreement are not specifically enforced, Company shall be entitled, among other remedies, (a) to an injunction restraining any violation of this Agreement (without any bond or security being required, to the extent permitted by the applicable law) by Employee and by any persons or entity to whom Employee provides or proposes to provide any services in violation of this Agreement, [and] (b) to require Employee to hold in a constructive trust, account for any pay over to Company all compensation and other benefits which Employee shall derive as a result of any action or omission which is a violation of any provision of this Agreement.[12]

---

[9] *Id.* at ¶ 6.
[10] Rec. Doc. No. 1-1, pp. 1-2.
[11] *Id.* at p. 2.
[12] *Id.* at p. 4.

The Agreement also provides for injunctive relief and an award of attorneys' fees in the event of a breach.[13]

On February 4, 2020, Defendant submitted his resignation to Plaintiff and claimed therein that his reason for leaving was a "better opportunity – economic reasons."[14] Defendant's employment ended on that day.[15] Not long after this separation, Plaintiff reviewed the contents of Defendant's work email to see if any company information or property had been misappropriated.[16] Plaintiff discovered that Defendant sent multiple screenshots and work emails containing Plaintiff's confidential and proprietary information to his personal email addresses just hours before he tendered his resignation.[17] Plaintiff observed that, at 10:57 am on February 4, Defendant forwarded an internal analysis reflecting a recent list of Plaintiff's top thirty customers in the Tucson area (the "Top 30 List").[18] Plaintiff also discovered that, at 10:32 am on February 4, Defendant forwarded a PDF document containing a list of all potential job prospects for Plaintiff nationwide as of February 2022 (the "February 2022 PEC List").[19] Plaintiff discovered that, between 10:09 am and 10:20 am on February 4, Defendant forwarded seventeen screenshots from his work computer reflecting client information, customer-specific billing rates, invoiced amounts, equipment rates, and market performance (the "Screenshots").[20] These items, along with others, were all forwarded to Defendant's personal email addresses.[21] Plaintiff

---

[13] *Id.* at pp. 4-5.
[14] Rec. Doc. No. 1, ¶ 11.
[15] *Id.*
[16] *Id.* at ¶ 12.
[17] *Id.* at ¶ 13.
[18] *Id.* at ¶ 14.
[19] *Id.* at ¶ 15.
[20] *Id.* at ¶ 16.
[21] *Id.* at ¶ 17.

avers that all of the information Defendant forwarded to himself on February 4 constitutes confidential and propriety information and includes trade secrets belonging to Plaintiff.[22]

Plaintiff claims that it takes great care in protecting its confidential business information. First, Plaintiff requires employees to sign Non-Competition Agreements. Second, Plaintiff protects its confidential business information by limiting access to company servers, requiring passwords to access work computers, and requiring three-step authentication to access H&E information on cellphones.[23] Defendant's access to Plaintiff's confidential and proprietary information was subject to these controls.[24]

Plaintiff is currently conducting a forensic analysis of the electronic devices recovered from Defendant, including his work-issued laptop, iPad, and iPhone, to determine whether Defendant has misappropriated other data.[25] Plaintiff believes Defendant forwarded the aforementioned proprietary information to his personal email so he could have access to this material after his employment with Plaintiff ended and to provide or otherwise use that information in connection with, and for the benefit of, his future employer – the "better opportunity" for which he resigned.[26]

## II.  STANDARD FOR A TEMPORARY RESTRAINING ORDER

In order to obtain a TRO, Plaintiff must demonstrate: (1) a substantial likelihood of success on the merits, (2) a substantial threat that Plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury outweighs the threatened harm to the Defendant, and (4) that granting the preliminary injunction will not deserve the

---

[22] *Id.* at ¶ 18.
[23] *Id.* at ¶ 19.
[24] *Id.*
[25] *Id.* at ¶ 20.
[26] *Id.* at ¶ 21.

public interest.[27]   Because a temporary restraining order is an extraordinary remedy, it should be granted only if Plaintiff clearly carries its burden of persuasion as to all four factors.[28]

Rule 65(b)(1) of the Federal Rules of Civil Procedure states that a court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:  (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."[29]

Plaintiff contends it is entitled a TRO under the Louisiana Uniform Trade Secrets Act ("LUTSA"),[30] the federal Defend Trade Secrets Act ("DTSA"),[31] and pursuant to the Non-Competition Agreement described above.

## III.   LUTSA & DTSA

The LUTSA prohibits the misappropriation of information that constitutes "trade secrets."[32] "In order to show that the trade secrets have been misappropriated, [the employer] would have to prove that (1) a trade secret existed, and (2) that they were misappropriated by the [employee]."[33] The term "misappropriation" is defined as

---

[27] *Justin Industries v. Choctaw Securities, L.P.*, 920 F.2d 262 (5th Cir.1990).
[28] *Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012) (quotation and citation omitted).
[29] Although granting a TRO without notice to the adverse party is clearly contemplated by Rule 65, the Court notes that its practice is to avoid ruling on such a motion without giving a defendant the opportunity to respond.  Here, however, despite being served and purportedly receiving email from opposing counsel, the Defendant has taken no action.  Thus, the Court will consider the TRO as contemplated by Rule 65(b)(1)(B).
[30] La. Rev. Stat. § 51:1431 *et seq*.
[31] 18 U.S.C. § 1836.
[32] *Johnson Controls, Inc. v. Guidry*, 724 F. Supp. 2d 612, 628 (W.D. La. 2010).
[33] *Id*. at 628–29.

"disclosure or use of a trade secret of another without express or implied consent by a person who ... at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use."[34]

"'Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that ... derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and ... is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[35]

To state a claim under the DTSA, a plaintiff must allege (1) the existence of a trade secret, (2) misappropriation of the trade secret by another, and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce.[36] Misappropriation under the DTSA is defined as:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
>   (i) used improper means to acquire knowledge of the trade secret;
>   (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>   (I) derived from or through a person who had used improper means to acquire the trade secret;
>   (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>   (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>   (iii) before a material change of the position of the person, knew or had

---

[34] *Id.* at 629.
[35] *Id.*
[36] *Complete Logistical Servs., LLC v. Rulh*, 350 F. Supp. 3d 512, 517 (E.D. La. 2018).

> reason to know that—
> (I) the trade secret was a trade secret; and
> (II) knowledge of the trade secret had been acquired by accident or mistake.[37]

Under the DTSA, a "trade secret," includes scientific and technical information that "the owner thereof has taken reasonable measures to keep ... secret" and "derives independent economic value ... from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."[38]

Because both provisions require Plaintiff to allege the existence and misappropriation of a trade secret, and both statutes define "trade secret" and "misappropriation" virtually identically, the Court will consolidate its analysis of Plaintiff's DTSA and LUTSA claims.[39]

## IV. ELEMENTS OF INJUNCTIVE RELIEF

### A. Likelihood of Success on the Merits

Plaintiff maintains it has demonstrated a likelihood of success on the merits as to the elements of a trade secret claim under the LUTSA the DTSA and for its breach of contract claim. Under Louisiana law,

> The threshold inquiry in every trade secrecy case is whether a legally protectable trade secret exists in fact. **Engineered Mechanical Services, Inc. v. Langlois**, 464 So.2d 329, 333 (La. App. 1st Cir. 1984), writ denied, 467 So.2d 531 (La. 1985). If the information is found in fact to be a protectable secret, it then becomes necessary to determine whether an express or implied contractual or confidential relationship existed between

---

[37] 18 U.S.C. § 1839(5).
[38] *Rulh*, 350 F. Supp. 3d at 517-18.
[39] *See Brock Services v. Rogillio, et al.*, No. 18-867-JWD-EWD, 2019 WL 9096410, *5 (M.D. La. June 17, 2019)(citing *e.g., Source Prod. & Equip., Co., Inc. v. Schehr,* No. 16-17528, 2017 WL 3721543, at *5–6 (E.D. La. Aug. 29, 2017) (concluding that LUTSA defines "misappropriation" and "trade secret" in the same way as DTSA and holding that the plaintiff had alleged a viable claim for trade secret misappropriation under both statutes)).

8

    the parties which obligates them not to use or disclose the secret information. *Id.* Finally, the plaintiff must prove the party receiving the secret information wrongfully breached its duty of trust or confidence by disclosing or using the information to the injury of plaintiff. *Id.* at 334; see also **Pontchartrain Medical Labs, Inc. v. Roche Biomedical Laboratories, Inc.**, 95–2260 (La. App. 1st Cir. 6/28/96), 677 So.2d 1086, 1090.[40]

At this stage, the Court finds that the Verified Complaint does make a *prima facie* showing that Plaintiff is likely to succeed on the merits of its trade secrets claim.

    First, Plaintiff has demonstrated that the information at issue in this case constitutes legally protectable trade secrets. Numerous courts have held that proprietary information such as, *inter alia*, customer lists, customer-specific information, and billing rates may constitute trade secrets if it is shown that efforts have been made to protect the secrecy of the information.[41] Also, the statements in the Verified Complaint demonstrate that Plaintiff has undertaken reasonable efforts to maintain the secrecy of its propriety information. Plaintiff requires its employees to enter into a Non-Competition Agreement, like the one executed between Plaintiff and Defendant in this matter. Plaintiff also password protects its computers and requires an extra layer of protection by requiring three-step authentication to access confidential materials when outside of the office.[42] Considering that, "'[t]he efforts required to maintain secrecy are those reasonable under the circumstances, and courts do not require extreme and unduly expensive procedures to be taken to protect trade secrets[,]'"[43] the Court is satisfied that Plaintiff's efforts to

---

[40] *Southern Marsh Collection, LLC v. State Traditions, LLC*, No. 2017-0459 (La. 1 Cir. 11/1/17), 2017 WL 4985217, *4 (emphasis in original).
[41] *Complete Logistical Services, LLC v. Rulh*, 350 F. Supp. 3d 512, 518 (E.D. La. 2018)("Louisiana courts have routinely held customer lists may constitute a trade secret.")(citing *Pontchartrain Med. Labs., Inc. v. Roche Biomedical Labs., Inc.*, 95-2260 (La.App. 1 Cir. 6/28/96), 677 So.2d 1086, 1090; *Wyatt v. P02, Inc.*, 26,675 (La.App. 2 Cir. 3/1/95), 651 So.2d 359)).
[42] Rec. Doc. No. 1, ¶ 19.
[43] *Elliott Company v. Montgomery*, No. 6:15-02404, 2016 WL 6301042 at *4 (W.D. La. Sept. 28, 2016)(quoting *Complete Oilfield Management & Maintenance Inc. v. Hogg*, 2015 WL 1467104, at *3 (W.D. La.,2015) (J. Haik)(quoting *Sheets v. Yamaha Motors Corp., U.S.A.*, 849 F.2d 179, 183 (5th Cir. 1988))).

9

protect its proprietary information more than pass muster.

Second, the Court is satisfied that Plaintiff has demonstrated that Defendant breached a duty of confidence owed to Plaintiff to maintain the secrecy of the proprietary information. The Verified Complaint sets forth the specific terms of the Non-Competition Agreement, wherein Defendant, upon the beginning of his employment with Plaintiff, undertook this obligation by agreeing to the terms in this contract.[44] Moreover, the terms of the Non-Competition Agreement are very specific and not at all vague in detailing what constitutes trade secrets and what is prohibited by the employee. There can be no doubt, based on the terms of the Non-Competition Agreement, that the proprietary information accessed by Defendant and forwarded to his personal email addresses constitutes a breach of the Non-Competition Agreement and the general duty of loyalty an employee owes to his employer under Louisiana law.[45]

Third, Plaintiff has demonstrated a *prima facie* showing that Defendant misappropriated its proprietary information. Plaintiff alleges it discovered that Defendant misappropriated the Top 30 Customer List, the February 2022 PEC List, and several Screenshots[46] – all of which contain trade secrets – by forwarding this confidential information to his personal email addresses just hours before tendering his resignation to Plaintiff to allegedly pursue a "better opportunity" for "economic reasons."[47] Plaintiff maintains, and the Court agrees, that there is no justification for the access and disclosure

---

[44] Rec. Doc. No. 1, ¶¶ 7-9.
[45] *Hunters Run Gun Club, LLC v. Baker*, No. 17-176-SDD-EWD, 2019 WL 3400696 at *4 (M.D. La. July 26, 2019)("Employees and mandataries owe duties of fidelity and loyalty to their employers and principals. An employee owes his employer a duty to be loyal and faithful to the employer's interest in business. An employee is duty-bound not to act in antagonism or opposition to the interest of his employer.")(cleaned up)(internal quotation marks omitted).
[46] Rec. Doc. No. 1, ¶¶ 14-16.
[47] *Id.* at ¶¶ 11-13.

of this proprietary information to Defendant's personal email addresses if not for some ill motive to Defendant's benefit and Plaintiff's injury.

The Court finds that Plaintiff has made a *prima facie* showing that it is substantially likely to succeed on the merits on its LUTSA, DTSA, and breach of contract claims.

### B. Irreparable Harm, Balance of Equities, Public Interest

Although Plaintiff argues it is not required under the LUTSA or the DTSA to demonstrate irreparable harm,[48] it nevertheless exists in this case. The Court agrees. As set forth in the Verified Complaint, the proprietary information misappropriated by Defendant includes its top 30 customers for the local market, the top bidding prospects as of February 2022, and specific information regarding client pricing, rental rates, and market performance.[49] Plaintiff contends this information "is the heart of H&E's business that could, if provided to another business … allow that business to achieve a competitive advantage of otherwise harm H&E's competitive position."[50]

Generally, to obtain injunctive relief, the movant must demonstrate that it will suffer imminent and irreparable harm in the absence of the relief sought.[51] The Fifth Circuit has held that "the equitable injunctive power of the federal court will not be exercised save in exceptional cases to prevent irreparable injury which is clear and imminent."[52] "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."[53] Additionally, "a loss of a business' customers and damage to its

---

[48] Plaintiff contends: "Both LUTSA and the DTSA provide that '[a]ctual or threatened misappropriation may be enjoined,' *see* La. Rev. Stat. § 51:1432(A); *see also* 18 U.S.C. § 1836(b)(3)(A)." Rec. Doc. No. 2-1, p. 9.
[49] Rec. Doc. No. 1., ¶¶ 14-16.
[50] Rec. Doc. No. 2-1, pp. 9-10.
[51] Fed. R. Civ. P. 65.
[52] *Heath v. City of New Orleans*, 320 F. Supp. 545, 546 (E.D. La.1970), *aff'd*, 435 F.2d 1307 (5th Cir.1971).
[53] *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). *See also Monumental Task Comm., Inc. v. Foxx*, 157 F.Supp.3d 573, 583 (E.D. La 2016).

goodwill are widely recognized as injuries incapable of ascertainment in monetary terms and may thus be irreparable."[54]  Plaintiff claims also that, pursuant to the Non-Competition Agreement, Plaintiff has the express right to obtain injunctive relief because "monetary damages will be inadequate and [H&E] will be irreparably damaged if the provisions of th[e] Agreement are not specifically enforced."[55]

Under the law and the facts presented in the Verified Complaint and pursuant to the terms of the Non-Competition Agreement, the Court finds that Plaintiff has demonstrated that Defendant stands to gain a competitive advantage – for himself or some other "business opportunity" – from his misappropriation of the proprietary information, and this threatened harm to Plaintiff outweighs any potential harm that may result to Defendant if the injunction is not granted.

Further, as the Fifth Circuit has explained: "An injunction to enforce the correct application of the law, in and of itself, serves the public interest."[56]  The Fifth Circuit has also held that protecting against the misappropriation of trade secrets is aligned with the public interest.[57]  Also, "[c]ourts generally find that the public interest is served when a company's right to proprietary information is protected."[58]  Thus, considering the facts of this matter as set forth in the Verified Complaint, the lack of any response from the

---

[54] *Johnson Controls, Inc. v. Guidry*, 724 F. Supp. 2d 612, 626 (W.D. La. 2010)(citing *Allied Mktg. Grp., Inc. v. CDL Marketing, Inc.*, 878 F.2d 806 (5th Cir. 1989); *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 336 (5th Cir. 2013) (recognizing, under Texas law, that the "threatened disclosure of trade secrets constitutes irreparable injury as a matter of law" and "harm to the trade secret owner may be presumed").
[55] Rec. Doc. No. 1-1, p. 4.
[56] *Daniels Health Scis., LLC* v. *Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013) (finding that the public is served when the law is followed).
[57] *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 273 (5th Cir. 2014) (finding that it was in the interest of public policy to prohibit the sale and use of M3 products containing infringing source code and that were derived from the improper misappropriation of trade secrets).
[58] *Centurum Information Technology Inc. v. Geocent, LLC*, No. 21-0082, 2021 WL 533707, at *15 (E.D. La. Feb. 12, 2021)(citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 481 (1974)).

Defendant despite proof of notice to him of this matter and this motion on more than one occasion,[59] the Court finds that Plaintiff is entitled to a Temporary Restraining Order.

## V. BOND

Plaintiff argues that, should the Court find a need for security under Rule 65(c), any bond should be *de minimus*. According to the Non-Competition Agreement, the parties agreed that no security would be required in obtaining injunctive relief.[60] Plaintiff also contends that Defendant will not be harmed or damaged from an order prohibiting him from using or destroying Plaintiff's trade secrets, and he will not be damaged if ordered to return this information. Thus, any costs Defendant might incur are *de minimus.* considering the terms of the Non-Competition Agreement, and the unlikelihood of major damage to Defendant if a TRO should issue, and the Court finds that bond is unnecessary at this stage.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Temporary Restraining Order[61] is hereby GRANTED. A preliminary injunction hearing is set in this matter for March 2, 2022 at 9:30 a.m. A telephone status conference is hereby set for Friday, February 25, 2022 at 10:00 am to discuss this hearing.[62]

**IT IS FURTHER ORDERED** that pending the determination of H&E's request for preliminary injunction, Defendant, and anyone acting in concert with him, is hereby enjoined:

a. from directly or indirectly possessing, utilizing, disclosing, and/or

---

[59] Rec. Doc. No. 15.
[60] Rec. Doc. No. 1-1.
[61] Rec. Doc. No. 2.
[62] Instructions for this call will be sent by the Courtroom Deputy in a separate email.

13

transmitting to anyone any of H&E's business information, including, but not limited to, customer lists and files and financial data, transactional histories, performance data, inventories, equipment sales reports, and the like;

b. from destroying, altering, erasing, secreting, failing to preserve or otherwise making unavailable for further proceedings in this matter any and all of H&E's business materials, property, information, customer lists and files, confidential information, and/or trade secrets, and/or any other records or documents that may be relevant to this lawsuit, wherever located, and in whatever form, including but not limited to any document, envelope, invoice, e-mail, database, report, software file, electronic data, tangible evidence, financial records, and any and all communications between or among Defendant and any other person with regard to the foregoing; and

c. to return any and all records or information of H&E currently in his possession, custody, or control or that at one time was in his possession, custody or control, but was transmitted to another person or entity, including, but not limited to, any and all information contained from such records.

Baton Rouge, Louisiana, this 23rd day of February, 2022.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**